2012-15-11 We believe the errors of the Board can first be demonstrated by considering the dependent claims that we highlighted in our brief. These dependent claims specifically recite the stereochemistry using the bolded wedges and the dashed lines, the type of stereochemistry that the Board was talking about in its opinion. But the Board contended that these dependent claims, while disclosing the use of the bolded wedges for Formulas 1B and 3B, did not disclose the same bolded wedge stereochemistry for Formula 2. However, it is our view that this was an incorrect construction because the Board did not follow Agilent. It mentioned the Agilent opinion in its decision but did not apply it to the dependent claims. When you properly apply Agilent to the dependent claims and look at what those terms mean in light of the specification of the SEILZ patent, it's clear that Formula 2 has to be Formula 2B. But the count is generic, right? And the dependent claims and the rest of the spec, except for the added claims, added for purposes of interference, describe 17 beta, not the genus. Well, I would argue that it's still an issue as when you say that the count describes it generically, that is their position. However, it's our position that when you look at the objective evidence of how these type of steroid compounds were being shown in the literature, we cite it to the Merck Index. But the count shows stereochemistry alpha and beta at all the other positions. And so 17 must be assumed to be generic. I don't think that's true, Your Honor. And the reason for that is, as we pointed out, if you look at our blue brief at page 23, you will see that even in the Merck Index where they have bolded wedges. We're not dealing with the Merck Index. We're dealing with a count here and an application which wishes to claim the benefit of an earlier date. I understand that you're talking about the count in general, but my point is even when you construe that count in light of the specification, it has to mean that it is a beta stereochemistry. And let me explain that a little bit further. Leaving aside the Merck Index, I think that's important evidence that should have been considered by the board, which they did not look at, in terms of how someone of skill in the art would interpret the count and the claims. But the reason you have to consider the straight line pointed upward as being evidence of a beta stereochemistry is because of the interaction between the independent and the dependent claims. This is a written description motion. They're saying our claims don't have adequate written description. Description of the genus, the count. Well, the count, in our view, is not necessarily limited to the genus. It covers the beta configuration. And I think the point to bear in mind is even if you look at the genus on that level and look at the independent claim, our dependent claims still survive. Could I ask you just to back up a second? Sure. If I understand the problem, if formula 2 is generic in the dependent claims, then there's no argument for inherency in the specification because the specification only discloses formula 1B and 3B. Well, the specification discloses formula 1B, 3B, and the only way to get there is through 2B. Correct. So what you would say is that 2B is inherent in the specifications but not a generic formula 2. That is correct in the context of the B formulation. But I would argue that even in the context of what they call the 3 or the 1 or the 2 formulation, because of the way the interaction plays between the independent and the dependent claim, that also has to be stereospecific. But stereospecific for formula 2. Right. But basically you lose in the dependent claims if the reference formula 2 is generic, right? No, I don't think so. The issue there is that this was a new issue raised by the board. They never attacked the stereochemistry of formula 2B. When they brought their motion, they had the burden of proof. And they never said anything about the stereochemistry of 2B. And if you look at the decision on the rehearing, the judge said, you are correct that they never raised that issue. And so we said, if you're going to get into what formula 2B is all about, we asked the board to give us the opportunity to present additional testimony on that. Okay, I understand that point, but let's assume hypothetically we reject that notion that there should have been some supplemental testimony period. But so on this record, if formula 2 is generic, you lose this to the dependent claims, right? I also think that Professor Groves testified that you have disclosure of, according to the board, he said you have disclosure of formula 1 generic, formula 2 generic, formula 3 generic. So we had the testimony, even for generic, that we had it. But he's no expert on patent law in terms of what's required for written disclosure for interference purposes. Right, but written description is still an issue of fact, Your Honor. It's still an issue of fact in terms of how it's interpreted by someone schooled in the art. And because even the board said that his testimony supported both the generics and the stereospecific, whichever option there was for formula 1, 2, and 3, I would argue that even on that level there's still sufficient evidence in the record. But the board decided against him, right? Well, the board decided against him only in the standpoint of timing. So what happened was they never argued anything about the stereochemistry of 2B. And the reason was because their witness, Dr. Kolesi, had admitted that 2B was the precursor. I should mention that point. So what happened was that all Professor Groves was talking about was this is how the stereochemistry conventions came about. People used straight lines pointed straight upwards before the introduction of these computer programs such as ChemDraw. They come back in their reply brief and now say, oh, no, wait a minute. After ChemDraw everyone is using bolded wedges. And we said, no, look at the Merck Index. Even after the introduction of ChemDraw, they're still using mixed stereochemistry conventions for this class of steroid compounds. And we pointed that out in our brief and we gave some examples. And the other point is that even their witness, Professor Warren, had used mixed stereochemistry conventions. So from the standpoint of the evidence, it's there that you could use mixed stereochemistry conventions. And the board did not reject Professor Groves. In fact, they said he was a highly qualified witness. It was only a temporal issue, a timing issue. And we dealt with the timing issue and showed that even after that point, that there was still the use of mixed stereochemistry conventions. So that's the issue for the independent claim and the dependent claims. With respect to the testimony period, unless Your Honor has any questions on that, I dealt with that in terms of getting additional testimony because it is a new issue. Finally, we raised the issue of, to go back on remand, the issue is what additional motion should we be allowed to bring. And on this level, there were several instances where we had requested permission to file motions related to patentability as it related to the SILES claims. One issue was that they had made some admissions in another proceeding in Europe about inoperability of some of the claims. And we asked for permission to present that evidence. Judge Tierney did not allow us to do that. And that's contrary to the precedence of this court about patentability determinations being nearly mandatory in the context of the interferences. And the second issue came up because in one of their motions, they had acknowledged that certain solvents didn't work. And we said, well, in light of that, there's also a utility issue there. And the board said, well, you should have brought that earlier, but it's impossible for us to have brought that earlier because the admissions on their part came into play when they brought their motion. So on those grounds, we think that there's reason for reversal. If the panel doesn't have any other questions, I'll reserve the rest for rebuttal. We will save it. Okay. Mr. Motale. Good morning, Your Honors. May it please the court. The board decision should be affirmed, and I want to jump right into the issue of claim construction that Your Honors were asking about. The board construed the claims, independent and dependent, where they have straight lines as denoting a stereogeneric formula. And that conclusion is supported whatever your decision about adjuvant is as it pertains to these claims. Because the first source that is common to these claims is the claims themselves. And no matter what you decide about adjuvant and its applicability to adjuvant does not apply to the independent claims, the claims themselves of Costantino can be referred to to construe them. And, of course, in those claims, the stereochemistry at position 17 is described differently in independent claim 30, for example, for formula 1 with straight lines than it is in dependent claim 32. And that's the only difference between 30 and 32? It's not the only difference, Your Honor. There is one slight substituent difference. So if you sub all the substituents from claim 30 into formula… What's the substituent difference? They're listed in claim 30. Yes. But you have those Rs, right? Right. And then for 1B you have actual substituents. You see that? Right, but I'm… So when you take formula… As to the stereochemistry at 17, that is the only difference, Your Honor. But the 3, formula 3 in both is distinguishable only, I take it, if at all, by the C17 bond, right? Whether it's stereospecific or stereogeneric. At the 17 position, that's correct. There is this other substitution issue. As I mentioned, if you put in the substituents on 3, there's a sort of a typographical error in claim 30 that permits a hydrogen atom where there shouldn't be one, I think, is the issue that's pointed out by counsel opposite in their reply brief. Where's the hydrogen atom? If you turn to A100, which I believe has… I'm looking at that. And you see that on A100 for 30, R15 can be hydrogen. Right. That is actually not correct. It's probably a typographical error. Because if you look at the very next line on A101, R16 together with R15 is the CH2 group, which is what turns it into 3B. But because that other statement is in there, the counsel opposite is arguing that there's actually a difference in claim scope. I'm sorry to get so deep. You answered the question. But in reality, once that typographical error is considered, there actually is no different claim scope between 30 and 32 if you take Costantino's claim construction. But we don't need to get there because these formula, as your honors know, are like a series of words. And you can write it out in an IUPAC statement of the compound. And when you get to 17, you say nothing, meaning generic. Or you say alpha or beta, meaning a specific stereochemistry. And when you draw… What about your opponent's comments on the Merck index and the chem draw point? Well, your honor, that's extrinsic evidence. We have compounds that have nothing to do with this case. And we're only going to get there if the intrinsic evidence is somehow unclear. And all the intrinsic evidence points dramatically in the direction that these are generic. So looking at the structures themselves, we get there from what the board held is the common understanding of what straight lines mean as of the priority dates of these claims. But we also get there from Costantino's disclosure. Even if Agilent doesn't apply, we think it should. Your main point, as I understand it, is that they chose to use the golding convention to describe the compound in the dependent claim. So they must have meant something different by the straight line in the independent claim. Absolutely. The ordinary doctrine that different words in a claim should be interpreted to have different meanings ordinarily. But also, when you go to the rest of the intrinsic record, in both worlds of Agilent. So let's take the world where Agilent doesn't apply because the claims aren't identical, as they say. Their own disclosure is scrupulously consistent. Every single time at the 17th position in every single instance in the Costantino disclosure, wedges are used. Can you address the inherency argument with respect to 2B? Thank you, Your Honor. Yes. Counsel opposite is arguing that because in the dependent claims, Formula 1B and 3B are selected. Formula 2, which is generic in the independent claim, and as you observed, if it's generic, I don't think they can establish their written description case, must be interpreted to be 2B. And here we have a real problem. If it is 2B, then there's written description support for it. Maybe you don't agree that it would be inherent in the specification. Correct, Your Honor. If it is 2B, they still have failed to produce any evidence that 2B is inherently formed from the experiments in their description. It's their description that's important for written description. And here's the problem Judge Bryson and I was getting to in connection with the claim construction. What they have done is completely obliterated the line between claim construction and written description. And what they've done is said, under Agilent, because the dependent claim was actually identically copied from our disclosure, unlike the independent claim, the dependent claim is identical. They say, under Agilent, we go to Siles' disclosure to interpret what Formula 2 means. And then they commit a cardinal mistake of claim construction, which is they go to columns 9 and 10 of our patent, and they say, this is the only embodiment between 1B and 3B. And then they commit a sin that's been around for decades in this court and its predecessor of attempting to construe the claim as limited to the sole disclosed embodiment, without any express statement by the patentee, that's us now because we're in Agilent, without any express statement by the patentee that the claim should be so limited. When in fact, the plain language of the claim and the fact that Formula 2 is always distinct from 2B in the disclosure teaches us that even in the dependent claims, that is a generic formula. There's no evidence that Siles in his disclosure limited it. It gets worse, though, when they go to written description because now what they try to do is say that because we disclose a reaction of 1B to 2B to 3B, that somehow provides the inherent written description for them. But written description is from their specification. And their specification doesn't recite any Formula 2. And no expert did any experiments on their specification showing that Formula 2B was inherently formed in their reaction. And that's exactly the problem of these alleged admissions from Dr. Kalless, our expert. What Dr. Kalless did was redo experiments from our specification. And all he's doing in the single page they give you at A320 from his declaration is repeating our experiments at 9 and 10. Did he say that if you construed a dependent claim to be limited to 2B, that it wouldn't find written description support on a theory of inherency in the Constantino specification? In other words, Constantino's specification has 1B and 3B. And the argument would be that, well, if you construe Formula 2 as 2B, then it's inherent. Does he say that that wouldn't be correct? The he in your honor's question is Kalless? Yeah, your expert. That's exactly the point. Kalless doesn't say anything about inherency because his sole job was to reproduce our experiments to show the separate patentability of some of our dependent claims. So nobody's addressed that question? There's no evidence in the record whatsoever. And Constantino had every opportunity to provide this evidence. And I have to point out that they've said repeatedly that we brought stereochemistry of Formula 2 up for the first time. That is literally true in that we never said Formula 2 is generic. No. What we said was straight lines means generic. We said it over and over again in connection with the independent claims. And we said you lack written description for Formula 2. When the board concluded that straight lines means generic, right below Formula 1 in Claim 30 is Formula 2 with the exact same straight line. It's not a surprise to anybody that when you say straight lines means generic, that straight lines means generic for Formula 2. And then the written description problem clicks right into place. And there's no surprise to anyone because their own expert did not provide the testimony necessary to provide written description for the dependent Claim 32. Can inherency provide a written description sufficient for interference purposes? Your Honor, I'm afraid I don't know the answer to that question. This is where I get jealous of those of you in the audience in here today that have patent bar numbers. I do not. And I don't know the answer to that question. It's certainly not been raised by either party in the briefing. I'm sorry, Your Honor. And the genus only contains two species, right? Correct. So the decision here, might both species be in effect disclosed by the genus? Your Honor, I have to correct that. It's not true that the genus only contains two species. The genus covers both the alpha and the beta, but also any racemic mixture thereof. And so, in fact, the genus covers an infinite... You mean 10, 90, 20, 80, 50, 50? Absolutely, Your Honor. And I misspoke when I said there are only two genus. Usually, if you have a racemic mix, it's 50-50, isn't it? Sorry. Any mixture of the enantiomers is covered by the genus. So the claims as written cover 10, 90, 80, 20. Thanks for the correction, Your Honor. So coming back to this Formula 2 business, I think the key problem that Costantino has presented is they want to use our specification for construction and commit a sin of claim construction, which is trying to limit our Formula 2 to the only disclosed embodiment without any express statement by the patentee. That's wrong. Then they want to use our disclosure to provide their missing evidence of written description. That's using the wrong description. The board got that exactly right. They've got to find their written description in Costantino's disclosure, which is silent as to Formula 2. They've known that all along. They have to go to inherent written description, and that means somebody somewhere needed to do the experiments from Costantino's disclosure. Well, nobody did that. Our expert didn't do that. Colless didn't do that, and certainly you will not find words in Colless. They give you one page at A320. We give you the whole thing at A2036. You will not find words in Colless like inherent, necessary, always, or anything like that that could provide the necessary inherent written description for Formula 2B. And even if they got that claim construction, Judge Dyke, they still lose because there's no evidence in the record that their experiments produced Formula 2B. Coming down just briefly, oh. It sounds as though you've got a written description problem of your own with respect to generic Formula 2. Your Honor, that's exactly what Costantino said, and as the board correctly observed, that issue is totally separate because we actually recite Formula 2 in our specification. We don't need to rely on inherent written description, and that's a battle for another day. But I thought you said you only described Formula 2B. That's not true, Your Honor. At columns 5 and 6, we have the generic Formula 2 in our patent. Okay. It's just that when going from 1B to 3B, the only reaction shown goes through 2B at 9 and 10. And that would be what a chemist would expect, right? I mean, you're not going to go from stereo-specific data to anything other than stereo-specific beta with respect to 2B into stereo-specific beta with respect to 3B, right? Isn't that a natural assumption that a chemist would make? Your Honor, while I am trained in chemistry, I have it written at the top of my outline, don't hypothesize. That doesn't apply to me, so I'm hypothesizing. There is no evidence in the record that that is in fact the case. But to engage your hypothetical, it in fact could decidedly not be the case. And I only want to point out to Your Honor, because I know that you know, in an earlier case involving the same compound from several years ago, one of the issues in that case, traspirinone, the case was fire-sharing pharma versus BAR. Right. In that case, the compound traspirinone is known to isomerize in acidic conditions. When acidic conditions are called out in 9 and 10, traspirinone isomerizes at that position in acid. So I'm not in any position to tell you that it doesn't do something between 1B and 3B under some circumstances. And no one is, because there's no evidence. Now I'm jealous of you, because you have a chemical background. But I appreciate that. I think I violated many instructions I received from Mr. Zolano in answering that question. I want to go just briefly to the two motions. On the supplemental testimonial period, the issue is twofold. One, this was, like I said, no surprise to Costantino. And I point out only as an aside that if they really wanted supplemental testimony, they could have filed a 146 action and gotten supplemental testimony. But also, they failed to follow the rules of the board in filing that motion. And on the patentability issue, I think there's actually a more serious issue at play, which is Costantino's position is when the board decided that Costantino could not file its patentability motion, that it automatically had to accept that at the beginning of the case. Gartside and Perkins v. Kwan do not hold that. They talk about what the board should do at the end of the case. On a full record, those decisions do not say that the board has no discretion to say this motion doesn't address all claims and I don't want to hear it. And then the second time they brought the motion was on the basis of an alleged admission. At A56, the board says, that's not a fig leaf of an excuse, evaluates it on the merits, looks at the facts, and says no. The board did not act in an arbitrary or capricious manner with respect to either of these motions. Thank you, Your Honors. Thank you, Mr. Mortara. Mr. Gilbert has a little rebuttal time, a little more than five minutes. Thank you, Your Honor. We have not made any errors in terms of claim construction or the written description issues. On the claim construction issue... But you think the PTO did. Yes, I think the PTO did. And I start with the proposition here that Agilent says for the claim construction aspects, you're supposed to look to the spec of the patent from which you copied or put in similar claims. So you start with their specification. And when I go to their specification and look at formulas 1B and 3B, the only way of getting to that is by 2B. And it's just as Dyke pointed out, that is the only disclosure. They want to say, well, there's some generic disclosure earlier, but that's not applicable to 1B, 2B, and 3B. So it is a matter of claim construction that that's what it means. And the reason that it's also a matter of claim construction for the independent claims is that when they say in their appellee brief that the only way that they work together is the independent and dependent claims have to mean the same thing. So if the dependent claim means formula 2B because that's what the spec says it means, then it also means the same thing in the independent claim. And if that means, Your Honor, that the independent claim has to be construed so that the straight line means the same thing as a bolded wedge, so be it. That's the problem with their patent as Your Honor pointed out. There is an error in their patent, but it goes through the claim construction in terms of making it make some kind of sense. And the only way it makes sense is the way I've described in terms of being 2B. Now, in terms of the written description challenge, what my opposing counsel says is, well, there's no evidence in the record to show what's in Constantino's written description. And I disagree with that. I mean, Professor Groves explained that formula 2 was inherent. And the stereochemistry of formula 2 was provided by their witness, Professor Colessi. What he says is, well, Professor Colessi was only being introduced to reproduce some test results. But as we pointed out in our reply brief, Colessi never did those test results. Someone else did it. What he put in his declaration was some indication of the mechanisms of the reactions before even getting into reporting on some test results from his assistant. And what those mechanisms show is that the precursor, the formula 3B, is always 2B. So it has a specific stereochemistry. And what he did when he drew the formulas, he used one of the acids that they use, sulfuric acid, or sulfonic acid, and also identified the acid we use, p-toluene sulfonic acid. So they want to contend, while all it was talking about was their patent, I disagree. It was talking about our patent as well because it identified the specific acid that we used. So on both levels, number one, claim construction, and number two, what's in the record, we have that evidence. So the point is, when they start, yeah, Judge Breyer. Go ahead. Yeah, when they start out in their original motions and put in this evidence from Professor Colessi that formula 2B is there, they've acknowledged it and we don't have to deal with it because at that point, they're the ones with the burden of proof. They're the ones that are coming forward and saying, well, you don't meet the written description requirement because of A, B, C, or D. And because they acknowledged that 2B was indeed there, we didn't have to get into the details of the stereochemistry. It was only after the board then made its original decision and looked at only the independent claims, we brought the dependent claims to their attention on the rehearing and then they said, well, they did not consider the Colessi evidence. And so we said, and they even acknowledged that 2B was not an issue before in the original motion. So we said, if Colessi doesn't do it, we're entitled to a supplemental testimony period. And he says, well, you could just bring a 146 action. But 146 actions are not the sole means of bringing testimony before an interference. Did we ask the board for a supplemental testimony period? I did ask the board for a supplemental testimony period. And they didn't respond to it. If you look at their... Did you satisfy all the procedural requirements for a supplemental testimony period? I believe I did. They say that to ask for a testimony period, it has to be a miscellaneous motion and I have to ask for a telephone conference. I think that was their argument. The request for rehearing by definition under the board rules is deemed a miscellaneous motion. The telephone conference, the board rules say you do not need for a request for rehearing. So we did follow the rules. To what extent is the granting or denial of a supplementary testimony period discretionary with the board? I guess I haven't really seen that before. In my view, they didn't exercise their discretion one way or the other. They just ignored it. Let's assume that they did exercise their discretion. Do they have discretion? They have some discretion, but I think that if we come forward with new evidence or come forward with the evidence to deal with this new issue they've raised, I should call it a new issue, not new evidence, but the new issue they've raised, we have a right to be heard and that's some of the cases we cited. Every trial tribunal has discretion on procedural aspects. Right, but in my view... Why should the board have less than a district judge, for example? Well, my point is that they abuse that discretion because, in essence, we started this interference. As I say, they have the burden of proof showing that Constantino's claims lack written description support and their initial position, right out of the box, was 2B is there. If you have formula 2, it's in the form of structure 2B. So, as Judge Bryson was pointing out, the chemical matter, if you would expect, if it started out stereospecific, you would have the intermediate be stereospecific and also the final product be stereospecific. There's nothing to say that there's anything in the mechanisms to change any of that. So, this is an issue that's been invented by the board because they wanted to find, in my honest opinion, a way out to not get into the details of the interference. So, they came up with a new argument. When I raised it, they didn't give me an opportunity to present evidence. If they're not... You've exceeded your time. Are there further questions? Thank you, Your Honor. We will take the case under advisement. Thank you.